## BOROLOS v. STATE OF INDIANA.

[No. 24,394.   Filed April 9, 1924.]

1. CRIMINAL LAW.—*Evidence.—Time of Commission of Offense.
—Sufficiency.*—The mere fact that the witnesses did not agree as to the exact time when the offense was committed would not make the evidence insufficient to sustain a finding of guilty. p. 470.

2. CRIMINAL LAW.— *Evidence of Other Offenses.— Harmless Error.*—In a prosecution for sodomy, tried by the court, the admission of testimony of similar acts on others than the prosecuting witness was harmless error where the trial court, in overruling the defendant's objection to such testimony, stated that "this wouldn't make this man liable for his offense in this prosecution." p. 471.

3. CRIMINAL LAW.—*Evidence of Other Offenses.—When Admissible.*—Where the evidence discloses a common practice embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or offers an explanation of facts that, unexplained, would tend to discredit the evidence introduced by the State, evidence of other crimes than the one charged in the indictment is sometimes admissible, especially in trials for sexual offenses.   p. 471.

4. SODOMY.—*Evidence of Other Offenses of Same Kind.—Admissibility.*—In a prosecution for sodomy committed on a boy in the presence of other boys who shared with the prosecuting witness what defendant gave him to induce the commission of

the crime, not only once but four times in succession, evidence that accused had committed similar offenses on them was properly admitted to explain their passive participation and their silence, and to rebut the possible inference that the story told was too improbable to be true. p. 478.

5. CRIMINAL LAW.—*Appeal.*—*Evidence Competent for Certain Purpose.*—*Presumed to be Limited by Trial Court.*—Where evidence of other crimes was competent for certain purposes, an appellate tribunal will assume that the trial court limited its effect to the purpose for which it was competent. p. 478.

From Lake Criminal Court; *William H. Matthews,* Special Judge.

Prosecution by State of Indiana against Andrew Borolos for the crime of sodomy. From a judgment of conviction, the defendant appeals. *Affirmed.*

*George P. Rose,* for appellant.

*U. S. Lesh,* Attorney-General, and *Dale F. Stansbury,* for the State.

EWBANK, C. J.—Appellant was convicted of the crime of sodomy. Overruling his motion for a new trial is assigned as error, under which assignment, he complains of the admission of certain evidence, and insists that the verdict is not sustained by sufficient evidence.

The affidavit was sworn to on March 17, 1923, and charged the commission of the alleged offense "on or about the 7th day of March, 1923", and the cause 1. was tried by the court, without a jury, on April 3, following. The prosecuting witness testified that he first met defendant (appellant) "before September, 1922", that the crime was perpetrated upon him by defendant in the presence of other boys, among whom were F. B. and D. S., at a designated place in the woods to which he said they went with defendant, at a time when he said defendant gave them cigarettes and gave him a dollar, and when defendant had an overcoat with him, on which they lay down; that this happened three or four times; that the second time

was about two weeks later, and the last time was about the last of September, and that defendant gave him a dollar three or four times and game him "moonshine." F. B. testified that he had known defendant only a few months, and that "around August", he was out in the woods at the place referred to with defendant and the prosecuting witness, and saw defendant commit the crime as charged, when defendant gave the prosecuting witness a dollar, and gave all of them cigarettes, and that defendant and another man had some "moonshine", which all of them drank; that it was in the summer time, but defendant had his overcoat with him. And D. S. testified that he was twice out in the woods at that place with the prosecuting witness, defendant and F. B., and that he saw defendant do the act charged, lying on the ground with the prosecuting witness, but did not know the date, but that it was "around June", and he thought the last time was "the last of June." Another witness testified that on the Sunday before the trial, defendant had offered him $50 to go on the witness stand and "lie about" defendant, and to "tell a lie about it so you can free me." There was no motion to require the state to elect a date on which it would rely. The mere fact that the witnesses did not agree as to the exact time when the offense was committed did not make this evidence insufficient to sustain the finding of guilty.

The prosecuting witness testified, without objection, that while they were over there in the woods together, defendant "mistreated us", and having repeated the statement that he "mistreated me", told exactly what defendant did in committing the alleged crime at that time, and stated that the other boys were only a few feet away at the time, and that at the second, third and fourth times when the act was repeated, defendant had met him and the others by ap-

pointment, when they drank moonshine together, and defendant "gave us money." F. B. after testifying that he was out there with some boys and men, including defendant and the prosecuting witness and D. S., when they drank "moonshine" which defendant and another man had brought, also testified that he stood only a few feet away while he saw the alleged unlawful act committed, and that the same persons went out together at least four times, when defendant repeated the act with the prosecuting witness, and that he saw defendant give the prosecuting witness a dollar, being "right there" at the time, and that "this" had been "going on among the boys down there * * * between themselves * * * this kind of work." Over an objection and exception by defendant, upon a showing that the time referred to was about two months before the date of the crime charged, this witness (F. B.) was permitted to answer the question: "Tell the court whether or not this man ever did that to you" by stating that "Andy done it about four or five times." In overruling the objection to this question, the trial judge remarked that: "This would not make this man liable for his offense in this prosecution", but undertook to state a ground on which he believed it to be admissible, which seems to be imperfectly reported. Similar testimony by D. S. was also admitted over an objection and exception. Appellant insists that the admission of such evidence was reversible error, as relating to the commission of a different offense upon a different person, not charged in the indictment. There was some evidence to the effect that the defendant worked regularly and bore a good reputation for peace and quiet and for honesty, and he testified that he did not "meet those boys together and go out in the woods with them", and did not "go out with those boys at night", and did not meet the prosecuting witness and go to the woods

with him, that he gave the boys no money, but sent his earnings "to old country", and that he did not have any "moonshine", nor drink any; and to the question, "Did you do any bad things with Louis S.?" (the prosecuting witness), he answered, "No sir, do nothing." But he was not questioned any more specifically as to what he did or did not do in the way of committing the crime charged. Under this state of the evidence, the cause having been tried by the court, and the court having stated at the time the objection to the evidence was overruled that "this wouldn't make this man liable for his offense in this prosecution", we should hesitate to reverse the judgment because of that ruling, even if the testimony were not competent for any purpose. But, where the evidence discloses a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others, or offers an explanation of facts that, unexplained, would tend to discredit the evidence introduced by the state, evidence of other crimes than the one charged in the indictment is sometimes admissible; and this rule is particularly applicable to trials for sexual offenses. *State* v. *Markins* (1884), 95 Ind. 464; *State* v. *Place* (1893), 5 Wash. 773, 32 Pac. 736; *Barnett* v. *State* (1922), 104 Ohio St. 298, 135 N. E. 647; *State* v. *Desmond* (1899), 109 Iowa 72, 80 N. W. 214; *State* v. *Hummer* (1905), 72 N. J. Law 328, 62 Atl. 388; *Harmon* v. *Territory* (1905), 15 Okla. 147, 159, 79 Pac. 765; *Proper* v. *State* (1893), 85 Wis. 615, 628, 55 N. W. 1035; *Cook* v. *State* (1922), 155 Ark. 106, 244 S. W. 735.

In *State* v. *Place, supra,* which was a prosecution for an alleged assault upon a passenger in a moving train, with the intent to commit sodomy, evidence that about two hours earlier, the same evening, defendant had committed a like assault upon another passenger on the

same train was held competent, although the train was then in a different state. In *Barnett* v. *State, supra,* which was a prosecution for the crime of sodomy, committed on a little girl who had been taken to ride in defendant's automobile, evidence of other like assaults upon other little girls who were taken to ride in an automobile at about the same time, with proof tending to identify the man who took them riding as the defendant, or the car in which they were taken as belonging to him, was held competent. The court said: "It is fundamental in reason and logic that when any fact has a causal connection or logical relation to another fact, so as to make the other fact either more or less probable, the first fact is competent, or is relevant, to prove the second; or, if the absence of either tends to show the absence of the other, by reason of their relation, then it is equally competent for such purpose if the absence or presence of the other be in issue."

In *State* v. *Desmond, supra,* in a prosecution for assault with intent to rape, alleged to have been committed upon a little girl, behind a curtain in a room where she had attended a public entertainment given by the defendant that afternoon, evidence that, at the close of the entertainment, defendant had given tickets to her and two other girls and asked them to stay until the audience left, and that he had taken each of the other girls, in turn, behind the curtain in the half hour or more that the prosecuting witness waited before she was called in, and had asked the first girl to lie down on the floor behind the curtain, and had induced the second to lie on the floor, when he had sexual intercourse with her, was held to be competent. In *State* v. *Hummer, supra,* which was a prosecution for carnal abuse of a female child under the age of consent, after the defendant had shown, by cross-examination of the chief of police, that the statement of the prosecuting

witness, when she went to police headquarters to lodge a complaint against defendant, was not taken down in writing, and that it was the practice to take statements in writing when the charges made were of a grave character, but that not more than a third of all the charges made by girls against men were so taken down, and that "there were few cases where there was such abundance of evidence", it was held proper, on redirect examination, to permit the witness to testify, in response to a question by the prosecutor, that upon a certain occasion there were other girls at police headquarters making charges against the defendant.   The court said: "The obvious purpose of this line of cross-examination was to impress the minds of the jurors with the idea that, from the fact that the witness had not taken down the statement in writing (of the child alleged to have been abused) he had given little credence to her story. His answer to the last of the questions which have been recited showed that the inference sought to be drawn from his nonaction lost much of its force where a number of such complaints were lodged by different girls against the same man.   In this situation of the case it was manifestly proper that the jury should be able to determine whether the failure of the witness to take down the girl's statement in writing was due to his lack of belief in its truth, or whether, in not doing so, he was following his usual course, under circumstances similar to those which were present in the matter which he was then investigating.   *   *   *   The evidence now under consideration was, in our opinion, competent for the purpose for which it was offered, and which has been already indicated.   *   *   *   This being so, it would have been an error, injurious to the state, to have excluded it because of its tendency to impress the jury with the idea that the defendant had a propensity to commit the crime for which he was on trial.   The pro-

tection of the defendant against such a result was to request the court to instruct the jury as to the limitations of the evidence, and of the purposes for which alone it could be considered by them."

In *Harmon* v. *Territory, supra,* the defendant was on trial for rape committed by him and two others upon a girl eighteen years old who had recently immigrated from Holland. She and her sister, four years older, testified that they were in a dance hall with their uncle when some men pushed the uncle out of the door, locking it behind him, and then forced the prosecuting witness into an adjoining room, where she was violated by the defendant and two other men. Witnesses for the defendant testified that she and her sister both submitted willingly to the embraces of men that evening, but quarreled with a man over the amount of money they should receive. The sister was permitted to testify that at the same time when the prosecuting witness was forced into an adjoining room by the three men, she was herself dragged to a room upstairs by two other men, and that they kept her there and each forcibly violated her while she could hear the prosecuting witness crying out and calling to her for help; the court instructing the jury that what other men did to the sister was not proof that defendant was guilty of the offense charged, but that the evidence was admitted for the purpose of explaining the conduct of the sister in failing to go to the rescue of the prosecuting witness. The Supreme Court of Oklahoma held that the evidence was properly admitted, and intimated an opinion that by its instruction the court had limited its application to a narrower compass than would have been justified under the circumstances.

In *Proper* v. *State, supra,* the defendant was convicted of assault with intent to rape a ten year old girl that he had taken into his family with the declared

intention of adopting her after three months trial. Evidence that another girl worked there for several days and slept with the prosecuting witness, during which time defendant did nothing to the latter except to kiss her, and that one night he got into the bed where the two girls were sleeping and had sexual intercourse with the other girl, who was shown, without objection, to have left the next day and lodged a complaint against him, was held competent, and the court said: "That the defendant went to the room in which Emma and the prosecutrix were sleeping and got in bed with them may fairly be considered to have been for the purpose of renewing his former attempts to gratify his brutal passions, and would have a material bearing in support of the testimony of the prosecutrix both as to previous and subsequent assaults upon her, and would be admissible for that purpose; and all that took place as a part of the transaction at that time would be competent." And again it said: "This conduct on this occasion was corroborative of the evidence of the prosecutrix in respect to other indecent or criminal assaults, such as are charged in the information, and would tend to sustain and render more credible her evidence of such other occurrences." In *Cook* v. *State, supra,* which was a prosecution for an assault on an eight year old girl with intent to commit rape, the testimony of three other little girls that the defendant had attempted to have improper relations with them at about the time of the alleged assault was held competent to rebut defendant's testimony to the effect that he was without sexual power at the time of the alleged assault on the prosecuting witness, and had been for two years before that time, and to show that the assault was not so improbable as he claimed.

And in *People* v. *Fultz* (1895), 109 Cal. 258, 41 Pac. 1040, which was a prosecution for rape of the defend-

ant's own daughter under the age of twelve years, evidence that the defendant had repeatedly committed rapes and acts of lewdness upon the child before the offense for which he was on trial was held competent by way of explanation of her testimony that she suffered no pain and made no outcry when the particular act charged was committed, and of the testimony of a physician who examined her soon after its commission that he found no laceration, but found the vagina to be of abnormal capacity.

In the case at bar, the testimony that the offense was committed in the presence of other boys who witnessed all the revolting retails, and who shared the cigarettes and "white mule" distributed by the defendant, but that they did not tell what they had seen until long afterward, and until the prosecuting witness had "got it", and had discovered that defendant had "hurt him", and told his mother about it, would seem almost impossible of belief without the explanation that they had a share in the shame they were concealing. These boys were shown to have been present, sharing with the prosecuting witness what defendant gave them to induce the commission of the crime, not only once but four times in succession. And we think that the evidence in question was competent for the purpose of explaining their passive participation and their silence, and to rebut an inference that the story they told was too improbable to be true. And being admissible for a proper purpose, we must assume that the trial judge who heard the evidence limited its effect to the purpose for which it was competent.

The judgment is affirmed.

Willoughby, J., absent.