DELBERT D. TWOMEY *v.* STATE OF INDIANA.

[No. 569S115. Filed March 9, 1971. Rehearing denied April 20, 1971.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

ARTERBURN, C.J.—This appeal encompasses three criminal actions commenced by one affidavit and two separate indictments. The affidavit charged the appellant with the offenses of rape and sodomy on or about April 6, 1966. Both of the indictments charged the appellant with rape, sodomy, and kidnapping on or about April 9, 1966, and involved two teen-age girls as victims.

Defendant first contends that the trial court prevented him from having a fair trial and committed a reversible error when that court overruled his Motion for Dismissal and Discharge and Special Plea of Unjustifiable Delay filed by his defense counsel on September 25, 1968. The aforementioned Motion was based upon former Rule 1-4D, the pertinent part of which follows:

*"Rule 1-4D. Discharge for Delay in Criminal Trials.* 1. Defendant in Jail—No defendant shall be detained in jail on a charge, without a trial, for a continuous period embracing more than six [6] months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient

time to try him during such period because of congestion of the court calendar; provided, however, that in the last mentioned circumstances, the prosecuting attorney shall make such statement in a motion for continuance not later than ten [10] days prior to the date set for trial, or if such motion is filed less than ten [10] days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor."

In determining that the trial court did not err in overruling defendant's motion for dismissal, we find the following proceedings relevant:

April 19, 1966— Capias issued to the Sheriff of Marion County on the basis of an affidavit and return made by the Sheriff thereon.

June 7, 1966— Following indictment by grand jury, a capias was issued and return was made by the Sheriff thereon.

May 11, 1966— Defendant pleaded "not guilty".

July 7, 1966— Defendant ordered committed to Division of Mental Health for 60 day evaluation.

September 14, 1966—Sixty day evaluation report filed, the recommendation being that the patient is mentally ill, does not meet the criteria of a Criminal Sexual Psychopath, and should be returned to Maximum Security for treatment.

October 18, 1966— Examining physicians recommended the defendant be permanently confined in the maximum security ward of the Norman Beatty Memorial Hospital.

December 28, 1966—Following sanity hearing of December 14, 1966, Court found defendant sane and competent to stand trial.

February 23, 1967—Defendant granted continuance.

August 16, 1967— Defendant granted continuance.

August 25, 1967— Following hearings, defendant ordered committed to Indiana Division of Mental Health for examination and evaluation for a period of 60 days.

January 11, 1968— Defendant filed petition for production of defendant for medical and psychiatric examination.

January 17, 1968— Defendant requested continuance of sanity hearing.

January 31, 1968— After submitting evidence in part, defendant requested continuance.

February 6, 1968— Defendant requested continuance.

April 24, 1968— Court found the defendant lacked comprehension to understand the proceedings and assist in his defense. Defendant committed to Indiana Department of Mental Health to be confined in an appropriate psychiatric institution.

May 9, 1968— Defendant's Motion to Reconsider overruled.

July 19, 1968— After receiving report from Central State Hospital determining the defendant capable of standing trial, defendant ordered returned to Marion County Jail to stand trial.

September 25, 1968—Defendant filed Motion for Dismissal and Discharge and Special Plea of Unjustifiable Delay.

The proceedings indicate that until December 28, 1966, when the Court found the defendant competent to stand trial, his sanity was in issue.

Prior to defendant's motion to be discharged on September 25, 1968, he had asked for continuances on February 23, 1967, and on August 16, 1967. On January 11, 1968, defendant petitioned for his production for medical and psychiatric examinations. Then, a continuance of the sanity hearing was requested by the defendant on January 17, 1968. A further continuance was requested on January 31, 1968. It is therefore apparent that the defendant actively requested and participated in the sanity proceedings and examinations which resulted in his confinement in mental hospitals. Defendant was found to lack sufficient comprehension

to assist in his defense in April of 1968. The time period under former Rule 1-4D was tolled by these proceedings in which defendant participated and delayed. Therefore, defendant's Motion for Dismissal and Discharge and Special Plea of Unjustifiable Delay was properly overruled on September 25, 1968. *State ex rel. Demers* v. *Miami Cir. Ct.* (1968), 249 Ind. 616, 233 N. E. 2d 777.

Dr. John E. Kooiker, a witness called on behalf of the defendant, was questioned by the court as follows:

"Q. Doctor, do you have an opinion as to whether or not a recurrence of the attack of insanity is highly probable?

"A. In my opinion it would be highly probable."

The defendant thereafter moved that the court declare a mistrial on the basis that the question and answer pertaining to a recurrence of insanity was highly prejudicial to the defendant in that it could conceivably implant in the minds of the jurors that if they turned the defendant loose with temporary insanity, there would be a probability that he would be a menace to society. We note, however, that Instruction Number 48 on the subject of insanity advised the jury to "look to the defendant's entire conduct, his background, and all the evidence introduced in this cause by both the lay witnesses and by expert witnesses and all other surrounding circumstances, facts and evidence that you may find existed at a reasonable time before and at the time of the crimes charged, and *within a reasonable time afterwards, together with all the other evidence relating thereto, . . .*" (Emphasis added) The instruction was given precisely as tendered by the defendant.

Once a plea of insanity is offered by a defendant, all relevant evidence is deemed admissible. In *Wilson* v. *State* (1966), 247 Ind. 454, 461, 217 N. E. 2d 147, 151, we stated:

"It has been repeatedly held that a plea of insanity opens wide the door to all evidence relating to the defendant

and his environment. In many instances evidence would not otherwise be competent or material except for showing the mental condition or mental state of the defendant."

Furthermore, in support of this point, the defendant cites only authority from other jurisdictions. In overruling the defendant's objection, the trial judge cited his duty under Burns Indiana Stat. Ann. § 9-1704a:

"9-1704a. Commitment to the department of mental health.—If, in any criminal action, the court or jury trying the cause finds the defendant not guilty on the ground of insanity, the court shall find as to the defendant's sanity at the time of the trial, and if the court shall find that the defendant is insane at the time of the trial, he shall order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution; or if he shall find that the defendant is sane at the time of trial, but the recurrence of such an attack of insanity highly probable, he shall order the defendant committed as above provided. Such person shall be committed to the department of mental health until released as hereinafter provided. [Acts 1951, ch. 238, § 1, p. 682; 1961, ch. 151, § 1, p. 329; 1967, ch. 291, § 1, p. 946.]"

The judge did not err in propounding the question to the witness.

Defendant next contends that the trial court committed reversible error at law when it overruled his motion for the court to instruct the jury to return a directed verdict in favor of the defendant for the reason that the State had failed to meet its burden of proving beyond a reasonable doubt that the defendant was sane and competent at the time he committed the crimes at issue. In *Johnson* v. *State* (1970), 255 Ind. 324, 328, 264 N. E. 2d 57, 59, we said:

"The jury had the right to accept any one of the statements of the psychiatrists or any part of them, or to reject them all, where there was contradictory evidence, and to weigh all the facts in the case on the issue of sanity. We recognize that once the issue is raised, the burden of proving sanity is on the State. . . . As long as there is evidence to support the issue of sanity, the jury has a right to reach its own conclusion on that issue."

The jurors who sat and heard the conflicting reports as to the defendant's sanity could reasonably have elected to place greater weight upon the testimony of some of the expert witnesses.

Defendant's fourth contention is that the trial court committed error when it sustained the State's objection to the admission of defendant's Exhibit D, which was a transcript of the evidence of a prior sanity hearing. Defendant's testifying witness, Dr. G. E. Widdifield, had apparently read the transcript before his examination of the defendant. We point out that the exhibit was a classical example of hearsay in that it was a written record not compiled by the testifying witness, nor was the party who did prepare it in the courtroom available for cross examination. Defendant has also failed to cite any authority in support of his position that it was error for the trial court to deny this exhibit as evidence.

The appellant, in tendered instructions numbered twenty-five and twenty-six, claims error in their rejection by the trial court. These instructions, in substance, told the jury that the application of the mouth to the genital parts of the body of another person does not constitute sodomy. In certain instances this Court has held that such acts (oral copulation) do constitute sodomy and for that reason there was no error in the refusal of the trial court to give these instructions to the jury. We recently upheld a conviction of sodomy in *Barnes* v. *State* (February 9, 1971), 255 Ind. 674, 266 N. E. 2d 617. The constitutionality of this sodomy statute has been previously determined by this Court. *Phillips* v. *State* (1967), 248 Ind. 150, 222 N. E. 2d 821; *Estes* v. *State* (1964), 244 Ind. 691, 195 N. E. 2d 471.

The judgment is therefore affirmed.

Givan, Prentice and Hunter, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported 267 N. E. 2d 176.